EVERITT W. SEALEY, APPELLANT, VS. WILLIAM C. THOMAS AND WIFE, EXECUTOR AND EECUTRIX OF J. B. PAGE, DECEASED, APPELLEES.

1. The doctrine that a " personal action once in suspense by the act of the party entitled to it, is always extinguished,"—questioned.

2. If an executor or administrator receive assets of the estate, sufficient to sat-isfy his debt due from the the testator or intestate, this, at *common law*, op-erates an extinguishment of his demand.

3. But the provision of the Statute, which takes away the right of retainer in cases of *insolvency*, so far modifies this doctrine as to confine its operation exclusively to solvent estates.

4. When a defendant sets up as a bar to the action that the plaintiff in the char-acter of executor had received assets sufficient to satisfy his debt, it is neith-er necessary nor proper, *that* the *plea* should allege, that the estate was sol-vent ; but if an insolvency is relied upon to bring the case within the opera-tion of the Statute, the fact should be distinctly averred in the *replication* by way of avoidance.

5. It is the first essential of good pleading, that it be characterized by *certain-ty*, and this quality is especially requisite in the replication.

The opinion of the Court embodies a full statement of the

26          SUPREME COURT,

Sealey *vs*. Thomas and Wife, Ex'or and Ex'trx.—Opinion of Court.

facts presented by the record, to which reference is made.

*W. Call*, for Appellant.

*J. Erskine*, for Appellee.

DUPONT, J., delivered the opinion of the Court.

The record before us presents the following state of case. The appellant instituted his suit against the appellees, as executor and executrix of John B. Page, deceased, in the Circuit Court of Jefferson County, and at the April term, A. D., 1853, of said Court, filed his declaration in an action of assumpsit. The declaration is in the usual form, containing the indebitatus count for work and labor—goods sold and delivered, together with the several money counts.— On the 12th day of July, A. D., 1853, the defendants filed their plea of *non assumpsit*, upon which issue was joined. And again, on the 10th day of November, A. D., 1853, they filed other special pleas, which upon motion were stricken out, for the reason, we presume, that they had not been filed within the time prescribed by the rules of Court.— At the same term the parties went to trial upon the general issue, and a verdict was rendered for the plaintiff. The defendants thereupon moved in arrest of judgment, which motion prevailed and a *venire de novo* awarded, with leave to both parties to amend their respective pleadings.

At the next ensuing term, the plaintiff filed his amended declaration and the defendants filed two additional pleas, numbered 4 and 5, respectively. No. 4 states by way of inducement, that the testator, Page, had appointed the plaintiff and his widow, Sarah C., executor and executrix of his last will and testament, who were duly qualified, and assumed the duty of the administration. That Sarah C., afterwards intermarried with the defendant, William C., who thenceforth became executor in right of his wife,

and concludes with the averment, that a large amount of assets belonging to the testator came to the hands of the said plaintiff as executor, and to the hands of the said plaintiff and the said Sarah C., as such executor and executrix before her said intermarriage. Plea No. 5, is a common plea of payment, concluding with a verification, and seems to have been abandoned in the further progress of the cause, as there is no replication to the same nor any further notice taken of it in the record of the proceedings.

To the 4th plea the plaintiff demurs generally, and sets forth (under the rule,) as special grounds of demurrer:— 1st, That the plea does not allege that the estate of the testator was *solvent.* 2nd, That it does not allege that there was a sufficiency of assets in the hands of the executor to pay his debt, *after paying all preferred debts.* 3rd, That it does not allege that plaintiff *did retain.* 4th, That at the time said supposed right of retainer attached, said plea does not allege, either "that legal notice had been given, that two years had elapsed, or that all preferred debts had been paid. And 5th, That the plea is uncertain, informal and in other respects insufficient.

Upon the argument on this demurrer, the Court overruled the same, and thereupon the plaintiff filed his replication.

The replication admitting and confessing the matters of inducement as set forth in the plea, " avers that he, plaintiff, did not retain the whole or any part of said indebtedness out of said assets, and that he was afterwards, to wit: on the       day of             discharged as executor from said estate, without retaining or being allowed the same," and concludes with a verification. To this replication the defendant filed a general demurrer, which was

sustained by the Court and judgment thereon was accordingly entered for the defendant.

From the several rulings of the Court, the plaintiff has appealed and assigns the following errors, viz:

1st, That the Court erred in overruling plaintiff's demurrer to defendant,s fourth plea ; and—

2nd, That the Court erred in sustaining defendant's demurrer to plaintiff's replication.

The demurrer to the plea raises the question as to the right and duty of an executor or administrator to retain out of the assets which may come to his hands, for a debt due him from the testator or intestate, and its consequent *extinguishment.* The doctrine on this subject is derived from the common law of England, and whatever diversity of opinion may exist as to its origin, and the reason upon which it is based, there seems to be none as to its universal recognition by the English Courts.

There are two elements involved in this doctrine which seem to have been strangely confounded, viz: the right to retain, and the consequences of that right—the *extinguishment of the debt.*

The former is clearly based upon principles of justice and sound policy, as is demonstrated by the reasons assigned for it in the books. Toller on executors, at page 295, says : " If a debtor appoint his creditor to the executorship, he is allowed both at law and in Equity, to retain his debt in preference to all other creditors of an equal degree. This remedy arises from the mere operation of law, on the ground that it were absurd and incongruous that he should sue himself, or that the same hand should at once receive and pay the same debt. And, therefore, he may appropriate a sufficient part of the assets in satisfaction of

his own demand, otherwise he would be exposed to the greatest hardships ; for since the creditor who first commences a suit is entitled to a preference in payment, and the executor can commence no suit, he must in case of an insolvent estate, necessarily lose his debt unless he has the right of retaining. Thus from the legal principle of the priority of such creditor as first commences an action, the doctrine of retainer is a natural deduction." Mr. Wentworth in his treatise on executors, (page 76,) is to the same purport ; and Blackstone in his Commentaries, (Vol. 3, Page 18,) places the doctrine of retainer upon the same ground. He says, " it is a remedy by mere operation of law, and grounded upon this reason, that the executor cannot without an apparent absurdity commence a suit against himself, but having the whole in his hands, so much as is sufficient to answer his demand, is by operation of law applied to that particular purpose."

From the view of the subject as taken by these elementary writers, it would seem that the right of retainer was a mere *personal privilege*, which might be waived at pleasure, and this would seem to be the more rational view.

The adjudicated cases, however, go further, and engraft upon the right of retainer, *and as a consequence thereof*, the doctrine of *extinguishment.* In Woodward vs. Lord Darcy, (1 Plowden, 185) the Court say, " but the reason why the action is lost forever is, because in judgment of law he is satisfied before; for if the executor has as much goods in his hands as his own debt amounts to, the property in those goods is altered and vested in himself, that is, he has them as his own proper goods in satisfaction of his debt and not as executor." Again, "the operation of the law is equivalent to a recovery and execution for him, and the

property is as strongly altered as it could be by recovery and execution."

Holt, C. J., in Wankford vs. Wankford, reported in Salk. 299, lays down the doctrine thus, "if the obligor make the obligee or the executor of the obligee, his executor, this alone, is no extinguishment, though there be the same hand to receive and pay ; but if the executor has assets of the obligor, it is an extinguishment, because then it is within the rule, that the person who is to receive the money is the person who ought to pay it ; but if he has no assets, then he is not the person that ought to pay, though he is the person who ought to receive it; and to that purpose is the case of 11 Hen., IV 83, and the case of Dorchester vs. Webb Cro., 372."

In the case of Plowden above referred to, it is also assigned as a ground for the doctrine of extinguishment, that by the merger of the character of creditor into that of executor or administrator, the *right of action* for his debt is gone, and that " a personal action once in suspense by the act of the party entitled to it, is always extinguished."

This position in regard to the non-revival of a personal action once suspended, seems also to have been recognised and sanctioned in the case of Smith vs. Watkins, 8 Humphries R., 341 ; and also in the case of Page vs. Patton, et al ; 5 Peters S. C. R., 313, cited by the counsel for the appellees. But with the utmost deference for such high authority, we are inclined to doubt the correctness of the position as a principle of law, for it is not universally true, that a personal action which has been once suspended, may not again be revived. The case of a *feme* losing by coverture her right to sue for a chose in action during the life of her husband, and the revival of that right after his death

if he had not reduced it into possession, is one amongst many familiar instances, which go to prove the unsoundness of the position.

From the examination which we have given this subject, it is very clear to our minds, that the only rational ground upon which the doctrine of "*extinguishment*" as contradistinguished from that of "retainer," can be placed is, that it is a mere *presumption*, that as the executor has in his hands the entire assets of the estate, and is authorized to appropriate them in the payment of debts, he will not fail to give his debt the preference over all others of an equal degree. If then we are correct in this view, it seems exceedingly strange and unaccountable, how it should ever have come to be decided, that the executor should be denied the right to rebut this presumption by proof. It is to be accounted for only from the great favor which legal presumptions found with the early common law Judges. And were it now a question of first impression or one not closed by an almost unbroken current of English and American adjudications, we are free to say that we should be disposed to treat it as a mere presumption and allow it to be rebutted by ordinary proof as in other cases. And we are not without the warrant of high authority for this view of the subject. In the case of Page vs. Patton, et al., above cited, at page 314, Justice McLean, in delivering the opinion of the Court, remarks as follows: "the law presumes his own debt to be satisfied, when assets come to his hands to the amount of it, there being no debts of higher degree. But may not this presumption be rebutted by an application of the money in the payment of other debts." Again at page 315, he says: " the right of an administrator to retain the money in his hands for the discharge of his own

debt, is as unquestionable as if it had been paid to him on execution. It is his own, and he may retain it as such.— This is the case put by some of the Judges in illustration of the principles, *but it is nowhere said that a waiver* of this right is an abandonment of it." Again at page 316, he says: "if such a right did not exist, the executor or administrator, would be in many cases without remedy. The principle was intended for his benefit and not to *mislead or entrap him.*"

But notwithstanding these liberal and enlarged views, this distinguished jurist felt himself, as did the majority of the Court, constrained to adopt the English view of the subject. And with such precedent before us, we are admonished to beware of rashly trenching upon a well established canon of the common law, as announced by its early sages. It may be proper to remark, however, that the case last referred to, involved a contest between the respective beneficiaries of the legal and equitable assets of the estate. How the question might have been decided, had it been presented as it is by the pleadings in this cause it is useless to conjecture.

But it was contended by the counsel for the appellant, that by virtue of our legislation on the subject, the common law doctrine of retainer has been wholly superceded and we were referred to Thompson's Dig., 196, § 6.— The Section referred to is in these words: " If a creditor be appointed the executor or executrix, the administrator or the administratrix of an estate, and the said estate be insolvent, he or she shall not thereby be entitled to prefer his or her debts to the exclusion of other demands against said estate, but shall be bound to make a *pro rata* settle-

ment of all demands which may be rendered in, according to law."

It is an admitted canon, applicable to the construction of Statutes, that where a Statute contravenes or alters a principle of the common law it must always be strictly construed And without any very stringent application of the rule, it seems to us very obvious, that the provision referred to is confined exclusively to insolvent estates, and that it was not the intention of the Legislature that it should have any more extended operation. The Statute on this subject in the State of Alabama is similar to ours, and the case cited by the counsel for the appellant, as an adjudication on the operations of that Statute, would seem to sanction the view taken by us. (Vide Shortbridge vs. Easeley, 10 Ala.; Rep. N. S., 520.)

In the State of Tennessee, a similar provision is incorporated into their Statute law, and in the case of Smith vs. Watkins, 8 Humphries Rep., 341—2, the point now under consideration, was expressly adjudicated, and the decision of the Court fully sustains our views. Green, Justice in delivering the opinion of the Court, says: " We do not think this doctrine is at all affected by our legislation except in relation to insolvent estates. Our insolvent laws require a distribution *pro rata* of an insolvent estate among all the creditors ; and of course in such case the right of retainer does not exist. But in relation to estates not operated upon by these laws, the common law doctrine of retainer applies in all its force. But for these laws, it is admitted, the doctrine would exist here ; and we are unable to perceive the force of the argument, that the change our Legislation has made in relation to the estates of insolvent persons, by consequence, works such a change in the prin-

ciple of retainer, so as to modify the doctrine from a conclusion of law, to a mere presumption of fact." Sustained as we are, by this concurrent authority, we are the more confident in the correctness of the conclusion to which we have arrived, that the provision of our Statute, which was cited by the appellant's counsel, has made no such change as is contended for, nor indeed any change except in relation to the class of estates to which it applies in terms.

Now as the fact of insolvency, if it did really exist, was a matter to be *replied* by way of avoidance, it was not necessary or proper that the plea should have alleged the solvency ; the legal presumption is, that the estate is solvent until the contrary is made to appear.

Not feeling that the principle involved in this case would authorize us to disregard the maxim of *Stare decisis,* we are constrained to overrule the *first* assignment of error, and to affirm the judgment of the Court below which overruled the plaintiff's demurrer to the defendant's fourth plea.

The 2nd error assigned is, " that the Court erred in sustaining defendant's demurrer to plaintiff's replication."

In order to determine upon the correctness of this assignment, we must revert to the pleadings as they are set forth in the record. The plea sets up as a bar to the action, that the plaintiff in his character of executor, had received of the assets of the estate an amount more than sufficient to satisfy his demand against the testator. The replication admitting the matter of inducement stated in the plea, viz: that he had assumed the execution of the will, and had received a sufficiency of assets, attempts to avoid the bar by alleging that he had been " discharged as executor from said estate, without retaining or being allowed the

same." To this replication there was a demurrer which raised the question of its sufficiency as an answer to the plea, and this is the point we are called upon to decide under this assignment of error.

The averment of the replication is in the following words, viz : " but plaintiff avers that he did not retain the whole or any part of said indebtedness out of said assets, and that he was afterwards, to wit : on the       day of       discharged as executor from said estate, without retaining or being allowed the same." Now without invoking the stringency of that rule which requires, that in the interpretation of the language of any pleading, it shall be taken most strongly against the party using it, it is very obvious that the term " discharge" as used in the replication may very well comport with the idea of a *regular discharge after full administration,* and by no means contravenes that idea. But giving to the term the interpretation contended for, viz, an involuntary or compulsory dismissal, from the office of executor, yet the other hypothesis assumed in the argument, viz : that the discharge occured *prior* to the expiration of the two years prescribed by the Statute for the settlement of estates, is wholly unsustained by any averment in the Replication. The date of the alleged discharge is in blank, and even if the blanks had been filled up with the day and year, yet the averment would still have been defective for the want of an express allegation that this date was prior to the lapse of the two years; for otherwise the conclusion could have been arrived at only by a course of calculation, which would have rendered the pleading *argumentative* and therefore defective.—— The replication is clearly bad for the want of *certainty,* both as regards the *date* and the character of the discharge.

It is the first essential of good pleading that it be characterized by *certainty*, and this *quality* is especially requisite in a replication.    Mr. Archbold in his work on Pleading and Evidence says: "the declaration must show plainly and *certainly* all circumstances material to the maintenance of the action ; for if there be two intendments, it shall be taken most strongly against the plaintiff."    Arch. Plead. & Evidence, 108.    Again he says: "the rules of pleading in case of declarations and pleas in bar are applicable also to replications."    Ib., 242.    And again: " a replication requires more certainty than a declaration."    Ib., 257.

The case was further argued by the appellant's counsel upon the hypothesis of the *insolvency* of the estate; but here again the position assumed was equally unfortunate, for there is no allegation in the record to support it.    If it were true that the fact of insolvency really existed, then, in order to bring the case within the operation of the provision of the Statute, it was essentially requisite that the fact should have been made the subject of direct and positive averment in the replication.    Upon reference, however, to the record, we can discover no intimation of the kind.

With the most anxious desire to accord to the appellant any benefit which might have accrued to him from the establishment of the position assumed in the argument on the second assignment of error, we are reluctantly forced to the conviction that neither of the hypotheses upon which the argument proceeded, find any sanction in, or support from the averments contained in the replication, and are therefore constrained to decide that the matters as therein pleaded afford no sufficient answer to, or avoidance of the defendant's fourth plea.

The ruling of the Judge below upon both points is sustained ; therefore the judgment of the Circuit Court will stand as affirmed with costs.