DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WYLIE BILLUPS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-3623

[Jun 27, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 50-2008-CF-011478-AXXX-MB.

Antony P. Ryan, Regional Counsel, and Paul O'Neil, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

This case is the story of what can happen when words in a case become detached from a legal principle, to float freely in the ether of Westlaw or Lexis like free radicals ready to trigger mutations in the law. Here we return such free floating words to their original meaning and affirm the sentences under review.

After a trial, appellant was convicted of four felonies: (1) Robbery with a firearm; (2) robbery with a firearm; (3) aggravated assault with a firearm; and (4) felon in possession of a firearm.

His original sentences were:

Count I: robbery with a firearm, 30 years in prison, 10 year mandatory minimum;

Count II: robbery with a firearm, 30 years in prison, 10 year mandatory minimum;

Count III: aggravated assault with a firearm, 5 years in prison, 3 year mandatory minimum, and

Count IV: felon in possession of a firearm, 15 years in prison, 3 year mandatory minimum.

Counts I, II, and IV were imposed consecutively, including the mandatory minimum provisions. Count III was imposed concurrently to Count I.

These sentences were the subject of our decision in *Billups v. State*, 219 So. 3d 900 (Fla. 4th DCA 2017). Based on the Supreme Court's decision in *Williams v. State*, 186 So. 3d 989 (Fla. 2016)[1], we held that the imposition of consecutive mandatory minimum sentences under section 775.087(2)(d), Florida Statutes (2008), was improper, because appellant's convictions arose from the same criminal episode and did not involve the discharge of a firearm. *Billups*, 219 So. 3d at 900; *see also Walton v. State*, 208 So. 3d 60, 64 (Fla. 2016). We reversed the sentences and remanded the case to the circuit court for resentencing.

At the resentencing hearing, appellant argued that the four sentences, in their entirety, had to be run concurrently, not just the mandatory minimum portions of the sentences.

The circuit judge commented that, from his review of the original sentencing hearing, it was "clear" that the sentencing judge (since retired) intended that appellant serve 75 years in prison. In response to appellant's argument that all sentences had to run concurrently, the judge observed that Florida's policy is not that crimes are "cheaper by the dozen" and that "when you have separate victims the court should be able to impose consecutive sentences."

---

[1] *Williams* stated this general rule applicable to this case:

Generally, consecutive sentencing of mandatory minimum imprisonment terms [under the 10-20-Life statute] for multiple firearm offenses is impermissible if the offenses arose from the same criminal episode and a firearm was merely possessed but not discharged.

186 So. 3d at 993. We applied this general rule in ordering resentencing in this case. *Billups*, 219 So. 3d at 900.

The judge resentenced appellant as follows, *nunc pro tunc* to September 17, 2010:

Count I: 30 years in prison, with a 10 year mandatory minimum;

Count II: 30 years in prison, with a 10 year mandatory minimum, consecutive to Count I;

Count III: 5 years in prison, with a 3 year mandatory minimum, concurrent to Count I;

Count IV: 15 years in prison, with a 3 year mandatory minimum, consecutive to Count II.

Pursuant to this court's mandate, the court ran all the mandatory minimum portions of the sentences concurrently.

This sentencing scheme creates two theoretical sentencing gaps in Counts II and IV. For Count II, the 20 year portion of the sentence in excess of the mandatory minimum does not begin to run until the sentence in Count I has been completed. For Count IV, the 12 year portion of the sentence in excess of the mandatory minimum does not begin to run until the 20 year portion of the Count II sentence has been completed. The chart below provides a pictorial representation of the sentences:

| Count 1 | 10 min man | | 20 years | | |
| Count 2 | 10 min man | | - Break in sentence - | 20 years | |
| Count 3 Served | 3 min man | 5 years | | | |
| Count 4 | 3 min man | - Break in sentence - | | | 12 years |

Needless to say, appellant would continuously serve his prison sentence until the end of the sentence in Count IV, so the gaps are theoretical only. Appellant would experience the sentence as one long continuous period of incarceration.

Appellant's challenge here is to these theoretical sentencing gaps, arguing that the Florida Supreme Court has held, "a prisoner is entitled to pay his debt to society in one stretch, not in bits and pieces." *Segal v. Wainwright*, 304 So. 2d 446, 448 (Fla. 1974).

In construing a sentencing statute, a court must "give effect to legislative intent." *Mendenhall v. State*, 48 So. 3d 740, 747 (Fla. 2010).

The legislature has been crystal clear in stating the intent behind section 775.087—"that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished **to the fullest extent of the law**." § 775.087(2)(d), Fla. Stat. (2017) (emphasis supplied). The Supreme Court has expounded on this legislative policy:

> [T]he Legislature has very clearly mandated that it is the policy of this State to deter the criminal use of firearms. This mandate is underscored by the widespread promulgation of the 10–20–LIFE law beyond mere statutory notice, through television commercials, posters, and other forms of advertising. This policy is further underscored by the statement of legislative intent in section 775.087, which was added in 1999, see ch. 99–12, § 1, at 538–42, Laws of Fla., and the accompanying increase to the mandatory minimum sentence under section 775.087 from three years for all crimes to ten years for all crimes except aggravated assault, possession of a firearm, or burglary. *Id.*

*McDonald v. State*, 957 So. 2d 605, 611 (Fla. 2007). As the Court noted in *McDonald*, in promulgating the 10-20-Life statute, the Legislature set forth the reasons that violations of the statute be punished to the "fullest extent of the law:"

> WHEREAS, Florida ranks among the most violent states in the nation, and
>
> WHEREAS, in 1975 the Florida Legislature enacted legislation requiring a minimum mandatory sentence of three years in prison for possessing a gun during the commission or attempted commission of a violent felony, and
>
> WHEREAS, the Legislature enacted this mandatory penalty in order *to protect citizens from criminals who are known to use guns* during the commission of violent crimes, and
>
> WHEREAS, the FBI reports that among persons identified in the felonious killings of law enforcement officers in 1997, 71% had prior criminal convictions, and one of every four were on probation or parole for other crimes when they killed the officers, and

WHEREAS, *criminals who use guns during the commission of violent crimes pose an increased danger to the lives, health, and safety of Florida's citizens and to Florida's law enforcement officers* who daily put their lives on the line to protect citizens from violent criminals, and

WHEREAS, the Legislature *intends to hold criminals more accountable for their crimes, and intends for criminals who use guns to commit violent crimes to receive greater criminal penalties than they do today,* and

WHEREAS, the Legislature intends that when law enforcement officers put themselves in harm's way to apprehend and arrest these gun-wielding criminals who terrorize the streets and neighborhoods of Florida, that these criminals be sentenced to longer mandatory prison terms than provided in current law, so that these offenders cannot again endanger law enforcement officers and the public, and

WHEREAS, there is a critical need for effective criminal justice measures that will *ensure that violent criminals are sentenced to prison terms that will effectively incapacitate the offender, prevent future crimes, and reduce violent crime rates*, and

WHEREAS, it is the intent of the Legislature that criminals who use guns to commit violent crimes *be vigorously prosecuted* and that the state demand that minimum mandatory terms of imprisonment be imposed pursuant to this act . . .

*Id.* at 611-12, quoting Ch. 99-12, Laws of Fla., at 537-38 (Emphasis added).

Against this mass of legislative intent emphasizing punishment, appellant relies on language plucked from *Segal v. Wainwright*, that "a prisoner is entitled to pay his debt to society in one stretch, not in bits and pieces." 304 So. 2d at 448. That is a far narrower principle than appellant contends. The legal principle derives from situations where a defendant has been *released* from incarceration, whether on parole or otherwise. This is not the situation presented here, where appellant will continuously serve the sentence imposed by the circuit judge.

*Segal* involved a situation where a defendant was convicted of attempted robbery, sentenced to "not more than 5 years" and paroled. He

then committed two crimes, for which he was convicted and sentenced to one year and for which his parole was revoked. He completed his sentence for the two crimes (apparently in a county jail) and was returned to the state custody "for completion of his initial robbery sentence." *Id.* at 447. He was paroled, arrested for robbery, convicted, sentenced to 9 years, and for which his parole was revoked. *Id.*

The Division of Corrections took the position that the defendant would not complete service of his initial 5 year sentence until after he served the subsequently imposed 9 year sentence. The Supreme Court rejected that approach in a situation where the defendant had been paroled on the initial 5 year sentence, was sentenced subsequently for later committed crimes, and was entitled to some credit on the 5 year sentence for time served on the one year sentence. *Id.* at 448.

As authority for the statement that a defendant "is entitled to pay his debt to society in one stretch, not in bits and pieces," *Segal* relied on *State v. Coleman*, 5 So. 2d 60 (Fla. 1941), a case which also involves a situation where a defendant was *released* from custody. The *Coleman* defendant was "committed to the county jail" to serve a six month sentence. *Id.* at 29. Five days later, without her consent, she was released from custody. *Id.* After she was free for "more than six months," the Dade County Sheriff took her into custody to serve the remainder of the six month sentence. *Id.* As the Supreme Court framed it, the question it had to "decide is whether the State can stay the running of a jail sentence prior to expiration, once it begins, without the convict's consent." *Id.* at 30.

The Supreme Court held that the *Coleman* defendant was entitled to release by way of habeas corpus, that the State could not split up the jail sentence without the defendant's consent, and commented that a "convict has a right to pay his debt to society by one continuous period of imprisonment." *Id.*

Both *Segal* and *Coleman* rest on the notion that a sentence of incarceration cannot be split by periods of freedom. That is not the situation in this case, where appellant will serve the mandatory minimums concurrently pursuant to *Williams*, but will serve the remainder of the sentences consecutively in one continuous period of incarceration. Unlike the situation in *Segal*, the crimes for which appellant was sentenced were part of the same criminal episode and he was sentenced for all crimes at the same time. Appellant's sentencing contention would require an absurd result—that a crime with multiple victims had to be punished the same as a crime with a single victim. Such a result is contrary to the expressed intent of the legislature in enacting the 10-20-Life statute.

We distinguish *Smith v. State*, 43 Fla. L. Weekly D771a (Fla. 4th DCA April 11, 2018). That case involved the sentencing of a defendant as a prison release reoffender, not a sentencing under the 10-20-Life statute, where only mandatory minimum sentences were required to be concurrent.

We acknowledge that other district courts of appeal have applied *Segal's* "bits and pieces" language beyond the fact situations present in *Coleman* and *Segal* to sentences involving continuous periods of incarceration. *See Stroman v. State,* 837 So. 2d 1070 (Fla. 2d DCA 2003); *Preyer v. State*, 575 So. 2d 748 (Fla. 5th DCA 1991); *Rozmestor v. State*, 381 So. 2d 324 (Fla. 5th DCA 1980). None of these cases concerned sentences where a defendant was released from incarceration as in *Segal* and *Coleman.* None of these cases involve the 10-20-Life statute with its express legislative directive that offenders be punished "to the fullest extent of the law." § 775.087(2)(d), Fla. Stat. (2017). In cases with multiple victims, to allow the requirement of concurrent mandatory minimum sentences to handcuff a judge's sentencing options is to nullify the express legislative intent.

We agree with appellant's contention that the sentence calculates to 62 years, as set forth above.

*Affirmed.*

GERBER, C.J., concurs.
CONNER, J., dissents with opinion.

CONNER, J., dissenting.

Although the conclusion reached by the majority is very attractive, my understanding of the law constrains me to dissent. I contend this case is not a story of what can happen when words in a case become detached from a legal principle, but instead, this case raises the question of whether a statute has altered a common law rule of Florida. I also contend that the common law rule of Florida, relevant to this case, is that once a sentence begins, it is to be served continuously and without interruption. I do not agree with the majority that section 775.087, Florida Statutes, altered the common law. I disagree with the majority contention that the resentences for counts 2 and 4 impose "*theoretical* sentencing gaps"; instead, the sentence gaps are palpable ones, as concretely demonstrated in the majority's graphic. Finally, I contend our supreme court's opinion in *Williams v. State,* 186 So. 3d 989 (Fla. 2016), as well as other supreme court case law and a substantial body of case law from this District and

others, compels us to reverse the resentences imposed by the trial court for counts 2 and 4 after our last remand, and again remand the case for resentencing on those counts.

The premise of the majority's opinion is that the language that a "convict has a right to pay his debt to society by one continuous period of imprisonment," *State ex rel. Libtz v. Coleman*, 5 So. 2d 60, 61 (Fla. 1941), and "a prisoner is entitled to pay his debt to society in one stretch, not in bits and pieces," *Segal v. Wainwright*, 304 So. 2d 446, 448 (Fla. 1974), announces "a far narrower principle than appellant contends." More specifically, the majority contends that "[b]oth *Segal* and *Coleman* rest on the notion that a sentence of incarceration cannot be split by periods of freedom," which is not the factual situation presented in this case.

Part of my problem with this premise is that it ignores what I consider to be additional key language in *Coleman*. The majority correctly points out that the supreme court framed the question presented in *Coleman* as "whether *the State can stay* the running of a jail sentence prior to expiration, once it begins, without the convict's consent," but the court also said, "It is alleged and not denied that *the sentence was interrupted without petitioner's consent*." *Coleman*, 5 So. 2d at 61 (emphases added). The majority seemingly ignores the use of the word "stay" with regards to sentencing. It is difficult for me to conclude the language in *Coleman* is limited to situations in which a prisoner was improperly given release from a sentence. To me, the terms "stay" and "interruption," particularly in the context of what the State can do, connotes something more than the precise fact patterns discussed in *Coleman* and *Segal*.

It is also significant the manner in which our supreme court expressed itself regarding a criminal's "right to pay his debt to society by one continuous period of imprisonment." The court has said:

> We recognize the general rule that a sentence to jail is executed only when the convict has actually suffered the imprisonment unless relieved by some competent authority. 15 Am.Jur. Criminal Law, Section 512.
>
> *A limitation to this general rule is sustained by logic and good authority. This limitation is to the effect that the convict has a right to pay his debt to society by one continuous period of imprisonment.*

*Coleman*, 5 So. 2d at 61 (emphasis added). It appears to me the court was clearly stating a Florida common law rule: once an incarceration sentence begins, it is to be served continuously and without interruption.

Additionally, I am concerned that the majority has overlooked some important language in its partial quote from *Segal.* The full quote is:

> The most striking feature of this case, as reflected above, is respondent's apparent disregard of *our oft-repeated holdings* that a prisoner is entitled to pay his debt to society in one stretch, not in bits and pieces.

*Segal*, 304 So. 2d at 448 (emphasis added). Again, it strikes me that the court is referring to a common law rule that once a prison sentence begins, it is to be continuous and uninterrupted.

As the majority correctly acknowledges, "other district courts of appeal have applied *Segal's* 'bits and pieces' language beyond the fact situations present in *Coleman* and *Segal* to sentences involving continuous periods of incarceration." What the majority fails to acknowledge, is that this District has also relied upon the "bits and pieces" language to resolve factual situations beyond those presented in *Coleman* and *Segal*, and even ones similar to the facts of the instant case. In *Regisma v. State*, 120 So. 3d 144 (Fla. 4th DCA 2013), we recently upheld a sentence after stating, "Generally, Florida courts are without authority to impose 'piecemeal' sentences that are interrupted and, thus, divided without the defendant's consent." *Id.* at 146 (quoting *Goodwin v. State*, 752 So. 2d 689, 691 (Fla. 1st DCA 2000)); *see also Francisco-Augustin v. State*, 695 So. 2d 1299, 1300 (Fla. 4th DCA 1997) (reversing on concession of error a sentence for count 2 in which a portion of the sentence ran consecutively to count 1 and the remainder ran concurrently with count 1, relying on *Rozmestor v. State*, 381 So. 2d 324 (Fla. 5th DCA 1980)); *cf. Gordon v. State*, 960 So. 2d 31, 40 (Fla. 4th DCA 2007) (noting that serving time spent in jail on the weekends as a condition of probation was not a sentence that violates the rule that a defendant must serve his sentence in one stretch rather than in bits and pieces).

In addition to my concern that the majority is ignoring Florida common law, it appears the majority ignores what I understand to be a correct principle of law as pointed out by the Fifth District,

> Unless there is specific statutory authority to impose a sentence, it cannot stand. And the language susceptible of differing constructions shall be construed most favorably to the accused. . . . [Section 921.16, Florida Statutes (1979)]

- 9 -

provides for concurrent sentences or consecutive sentences, *but not a combination.* Divided or non-consecutive sentences have been uniformly disapproved in this state.

*Rozmestor*, 381 So. 2d at 326 (emphasis added) (internal citations omitted). I respectfully submit that the majority is taking the statutory words "that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law," § 775.087(2)(d), Fla. Stat., and stretching those words to now authorize something that neither section 775.087 nor section 921.16 expressly provides for: incarceration sentences being divided and interrupted into portions so that they can be stacked consecutively and concurrently in various combinations. In other words, the majority is solving an alleged impropriety (detaching words from the moorings of a legal principle) with another impropriety (stretching words beyond their meaning to embrace a new legal rule). Other than the "fullest extent of the law" language quoted above, the majority can point to no other statutory language that allows sentences imposing a fixed period of incarceration to be divided into portions.

As early as 1855, our supreme court wrote:

It is an admitted canan [sic], applicable to the construction of statutes, that where a statute contravenes or alters a principle of the common law it must always be strictly construed.

*Sealey v. Thomas*, 6 Fla. 25, 33 (Fla. 1855). In 1912, the court said:

A statute will not be construed as taking away a common-law right existing at the date of its enactment, unless that result is imperatively required—that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory.

*Cullen v. Seaboard Air Line R. Co.*, 58 So. 182, 183 (Fla. 1912) (quoting *Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 437 (1907)). Seventy years ago, the court said:

Statutes in derogation of the common law and penal statutes should be strictly construed, and if there is any doubt as to their meaning, the courts should resolve such doubt in favor of the citizen.

*State ex rel. Williams v. Coleman*, 180 So. 357, 359 (Fla. 1938).

Simply put, I agree with the logic and analysis of the Fifth District in *Rozmestor*:

> In *Segal v. Wainwright*, 304 So. 2d 446 (Fla. 1974), the Florida Supreme Court rejected the state's argument that the defendant should serve a five year robbery sentence with a one year sentence and a nine year sentence sandwiched between parts of the five year sentence. The court noted its "oft-repeated holdings that a prisoner is entitled to pay his debt to society in one stretch, not in bits and pieces." *Id.* at 448. The sandwiching of parts of one sentence between another was rejected in that case. Whether consecutive or concurrent the prisoner must be allowed to serve his sentence seriatim and in one stretch rather than in bits and pieces.

*Rozmestor*, 381 So. 2d at 326.

The case law demonstrates that the concept of serving an incarceration sentence continuously and without interruption is not a "free radical," but one grounded in a common law rule relied upon not only by our sister courts, but this Court as well. Although the majority focuses on the language from *Segal* regarding "bits and pieces," both this Court, as well as the Second District have *expressly* condemned a part consecutive and part concurrent sentencing scheme. The Second District, using the strong language that "imposing a prison sentence that is part concurrent with and part consecutive to another prison sentence is a punishment that *no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances.*" *Stroman v. State*, 837 So. 2d 1070, 1071 (Fla. 2d DCA 2003) (emphasis added).

Shortly before oral argument in this case, this Court used similar (although not as strong) language, in *Smith v. State*, 4D17-1787, 2018 WL 1747825 (Fla. 4th DCA Apr. 11, 2018). In *Smith*, we said, "Imposing a sentence that is *partly concurrent and partly consecutive* to another sentence violates a defendant's right to 'pay his debt to society in one stretch, not in bits and pieces.'" *Id.* at *1 (emphasis added) (quoting *Segal*, 304 So. 2d at 448). In *Smith*, we demonstrated the grounding of the concept, anchoring the "bits and pieces" language to the impropriety of a part concurrent and part consecutive sentence. The majority's bid to distinguish *Smith* relies on a distinction without a difference, particularly where the majority relies on the intent of the 10-20-Life statute to reach its conclusion. Notably, in one of the cases it cites for that very purpose,

our supreme court discussed how this Court found the intent for the Prisoner Reoffender Releasee statute to be the same as that of the 10-20-Life statute. *See McDonald v. State*, 957 So. 2d 605, 609 (Fla. 2007) ("The Fourth District further concluded that the legislative intent expressed in section 775.087(2)(d) [the 10-20-Life statute], that violators be 'punished to the fullest extent of the law,' *is the same clear intent* expressed in section 775.082(9)(d)(1) [the Prisoner Reoffender Releasee statute] that was noted by this Court in *Grant*[ *v. State*, 770 So. 2d 655 (Fla. 2000)]." (emphasis added)).

I completely agree with the majority and share the frustration of the trial court that if my position is correct, the common law and current status of the applicable statutes significantly "handcuffs" the trial court from trying to achieve the total length of time the trial court justifiably imposed at the original sentencing: 75 years of incarceration. However, I disagree that the common law and current status of the applicable statutes nullify the express legislative intent to punish "to the fullest extent of the law." In this case, because the sentence imposed for count 2 is illegal, on resentencing, the trial court has the option of imposing a more severe sentence for that count. *See Harris v. State*, 645 So. 2d 386, 388 (Fla. 1994) (determining that a trial court can impose a habitual offender sentence on remand after the court has pronounced a non-habitual sentence in the original proceedings without violating the Double Jeopardy Clause because there was no expectation of finality when the defendant attacked the legality of the sentence); *State v. Swider*, 799 So. 2d 388, 391 (Fla. 4th DCA 2001) ("A trial court may vacate an illegal sentence and impose a harsher sentence without violating the defendant's double jeopardy rights."). I do not see the pre-existing common law rule that a defendant is to serve an incarceration sentence continuously and without interruption as so repugnant to any statutory provision that the survival of such right would in effect deprive the subsequent statute of its efficacy or render its provisions nugatory.

With regard to the ability to stack mandatory minimum sentences, I contend that the problem must be fixed by the legislature, rather than a judicial declaration that words in a case have become "detached" and "float . . . like free radicals ready to trigger mutations of the law." Agreeing that a substantial body of prior case law is correct, I respectfully dissent.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***