LOGUE, J.
*217 Defendant, Lazaro Alfonso, seeks review of the trial court's order denying his motion to suppress the identification made by the sole witness who observed him breaking into her home. We affirm.
FACTS
The witness, an eleven year-old girl, was home alone. Upon hearing a knock on the front door, she looked through the peephole and saw a man wearing a baseball cap. She immediately telephoned her father, who told her to not open the door. She checked the peephole again, but the man was gone.
Approximately one hour later, the witness heard glass shattering in the living room. She went to the living room and from about fifteen feet away, saw a man breaking through a window with a "tool." She moved in closer and was able to observe from a distance of about three feet. She recognized him as the same man who was previously at the front door, though he was no longer wearing a cap. The venetian blinds covering the window were pulled down, but the slats were open. The witness quickly called her father again, locked herself in the bathroom, and called the police. Within minutes, the police arrived and found the defendant in the backyard. He was carrying a backpack with personal items and also had a screwdriver.
The police conducted a show-up shortly thereafter with the defendant on the street.[1] The witness was able to view the defendant from her kitchen window. The period of time between the witness's observation of the man breaking the window and the show-up was approximately twenty minutes. The witness immediately identified him as the man who was previously at the front door. The defendant was ultimately charged with burglary of an unoccupied dwelling, criminal mischief causing damage of two hundred dollars or less, and possession of burglary tools. The defendant made a post-Miranda confession whereby he admitted to having burglarized the house in order to get money for alcohol and drugs.
Prior to trial, the defendant moved to suppress the witness's identification of him. The witness testified at the motion to suppress hearing. The motion was denied. At trial, over defense objection, the State introduced the witness's out-of-court show-up identification and had the witness make an in-court identification of the defendant. The defendant was convicted of the lesser-included offense of trespass.
*218 The appellant now argues that the trial court abused its discretion by not suppressing the identification by the witness because it was based upon the impermissibly suggestive show-up. Because there was no error, we affirm.
STANDARD OF REVIEW
We review the trial court's denial of the motion to suppress the out-of-court identification for abuse of discretion. Walker v. State, 776 So. 2d 943, 945 (Fla. 4th DCA 2000) ("The decision to admit a pre-trial identification is within the sound discretion of the trial court and the decision should be overturned only upon a showing of abuse of discretion."); Lee v. State, 635 So. 2d 128, 130 (Fla. 3d DCA 1994) ("The decision to admit an out of court identification was within the sound discretion of the trial court."). The court has not abused its discretion where the "court's decision [is] well supported by substantial and competent evidence." Walker, 776 So. 2d at 945.
ANALYSIS
A "pretrial identification is considered a 'show-up' procedure where the police take a witness, shortly after the commission of an observed crime, to where the police are detaining the suspect, in order to give them an opportunity to make an identification." Walker, 776 So. 2d at 945. Furthermore, "[a]lthough 'show-up' procedures are inherently suggestive because the witness is presented with only one suspect for identification, it can be valid if the identification is based solely upon the witness's independent recollection of the suspect without being influenced by the suggestiveness of the procedure." Id. When evaluating whether a show-up is impermissibly suggestive, "[t]he test promulgated by the United States Supreme Court and adopted by [the Florida Supreme] Court is twofold: (1) did the police employ an unnecessarily suggestive procedure in obtaining an out-of-court identification; and (2) if so, considering the totality of the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification." Walton v. State, 208 So. 3d 60, 65 (Fla. 2016).
The defendant argues that the police conducted an unnecessarily suggestive show-up, in light of the witness's testimony, including but not limited to the pre-show-up comments from law enforcement to the witness "that they had already gotten him." The defendant argues that this unnecessarily suggestive show-up created "a substantial likelihood of irreparable [mis]identification." However, even where a "show-up procedure may have been suggestive," a court may still find that "based on the totality of the circumstances, the identification was reliable and there was no likelihood of irreparable misidentification." Lassiter v. State, 858 So. 2d 1134, 1136 (Fla. 5th DCA 2003).
In order to analyze whether under the totality of the circumstances there exists a substantial likelihood of irreparable misidentification, the court considers "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." Walton, 208 So. 3d at 66.
In light of these factors, and examining each in turn, the totality of the circumstances in this case did not give rise to a substantial likelihood of irreparable misidentification. The first factor requires that the court look to the "opportunity of the witness to view the criminal at the time of the crime." Id. Here, the witness had sufficient *219 time to view the defendant at the time of the crime. The record shows the witness saw the defendant through the peephole initially and observed him for approximately 20-30 seconds. She then observed him again from a distance of about fifteen feet, as he was attempting to break through the window, and then from a distance of three feet for a span of 10 seconds.
Next, the court examines "the witness's degree of attention." Id. The record demonstrates that the witness had a high degree of attention focused on the defendant. The witness focused solely on him as she observed him through the peephole and also focused her attention on him when she observed him breaking through the window. She testified that she was approximately fifteen feet away from the window when she first saw him, but then slowly moved to a distance of roughly three feet away from the defendant and the window. She observed him throughout the duration of this time. Her attention was first focused on his hands as he was striking the window, but she then focused on his identity and motive.
Third, the court also examines "the accuracy of the witness's prior description of the criminal." Id. The trial court found that there was no prior description. However, the court did find the witness credible when she described the defendant as she saw him through the peephole and when she recalled his appearance while breaking the window. The witness was able to describe his height, build, skin tone, and clothing after viewing him through the peephole. She testified that, upon seeing him break the window, she was able to again observe his skin tone, height, build, clothing, and haircut since he was no longer wearing a cap.
Fourth, the witness demonstrated a high "level of certainty ... at the confrontation." Id. The witness immediately identified the defendant during the show-up as the person she had seen through the peephole and the person who was attempting to break-in through the window. She testified that at the show-up, she was sure that the defendant was the same man she had seen through the peephole and breaking her window. She further identified him in court and stated that she would not have told the police it was him if she was not sure.
Lastly, "the length of time between the crime and the confrontation," see id., in the underlying case weighs against irreparable misidentification. From the time the witness observed the defendant breaking the window to the time of the show-up, approximately only 15-20 minutes had elapsed.
Because there is substantial competent evidence in the record to support the trial court's finding that there was no substantial likelihood of irreparable misidentification, we hold there was no abuse of discretion and the trial court properly denied the motion to suppress. See Lassiter, 858 So. 2d at 1136 (affirming denial of motion to suppress despite a possibly suggestive show-up where, based on the totality of the circumstances, there was no likelihood of irreparable misidentification given that the witness had a reasonable opportunity to view the defendant, observed the robbery for two minutes, the witness's attention was focused on the defendant during the robbery, the crime occurred in a well-lit area, the witness positively identified the defendant in a show-up, and "only three hours had elapsed between the crime and the identification"); State v. Jackson, 744 So. 2d 545, 548 (Fla. 5th DCA 1999) (reversing order granting motion to suppress where witness was able to observe the defendant in broad daylight, the witness was physically close to the defendant while observing, the witness's description of the *220 defendant was "reasonably accurate," the witness's identification did not waiver, and the period of time between crime and identification to be fifteen minutes); Lee, 635 So. 2d at 129 (affirming denial of motion to suppress where the court "found that the officer had opportunity to view the defendant at the time of the crime, that his attention was focused on defendant, that his radio description, although fairly generic, was accurate under the circumstances, that he was sure of his identification, and, that a very short time had elapsed between the crime and the identification.").
Even if the trial court had, under the facts of this case, erred by not granting the motion to suppress, any error would have been harmless. Here, the witness saw someone using a "tool" to break a window in order to enter her house. The defendant was caught in her back yard with a screwdriver shortly after she called the police to report the break-in. The witness's father stated that he did not know the defendant and the defendant did not have permission to be in their back yard. When apprehended, the defendant's only excuse was that he had heard police sirens and jumped into the backyard. Additionally, the defendant signed a post-Miranda confession stating that he was attempting to break into the house because he needed money for drugs and alcohol. Given the totality of the circumstances in the record, any error in admitting the identification was harmless beyond a reasonable doubt. See Scott v. State, 629 So. 2d 238, 241 (Fla. 3d DCA 1993) (holding that even in light of the admission of unduly suggestive show-up, "we do not reverse on this ground ... because we find no error in the trial judge's ultimate conclusion that, under all the circumstances, the out-of-court identification did not taint Moore's in - court identification of the defendant."); see generally, State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986).
Affirmed.

There was conflicting testimony regarding the show-up. The officer who handled the show-up testified that the police car was not in view at the time of the show-up and the defendant was not in handcuffs. However, the witness's testimony indicated he was handcuffed and was "at" the police vehicle. The witness also testified that the dispatch officer on the phone told her it was safe to go outside because the suspect had been caught. She further testified that the officer who greeted her when she opened the door also told her that they had caught the suspect. Both instances of being told the suspect had been caught occurred before the show-up.