# Supreme Court of Florida

_____

No. SC13-1080
_____

**RONALD WILLIAMS**,
Petitioner,

vs.

**STATE OF FLORIDA**,
Respondent.

[March 3, 2016]

PERRY, J.

This case is before the Court for review of the Fourth District Court of

Appeal's decision in <u>Williams v. State</u>, 125 So. 3d 879 (Fla. 4th DCA 2013).  In its

decision, the district court ruled upon the following question, which the court

certified to be of great public importance:

> Does section 775.087(2)(d)'s statement that "The court shall impose
> any term of imprisonment provided for in this subsection
> consecutively to any other term of imprisonment imposed for any
> other felony offense" require consecutive sentences when the
> sentences arise from one criminal episode?

Id. at 880.  We have jurisdiction.  See art. V, § 3(b)(4), Fla. Const.  For the reasons discussed below, we answer the certified question in the negative and quash the Fourth District's decision.

## STATEMENT OF THE CASE AND FACTS

On February 12, 2008, four men had just arrived home and were walking toward their apartment door when they heard Ronald Williams, who was in a neighbor's driveway, calling out offensive words regarding their sexuality, including "faggot," "punk," and making other "homosexual gestures."  The men exchanged words with Williams, then Williams "pulled a gun, pointed it at the men, and then fired the gun into the air multiple times, causing the men to run inside their home."  Williams, 125 So. 3d at 880.  The men reported the incident to police, and Williams was arrested a short time later.

"The [S]tate charged [Williams] by information with four counts of aggravated assault with a firearm, during the course of which [he] actually possessed and discharged a firearm.  The four counts corresponded with each of the four victims."  Id.

Williams admitted in a recorded statement to police that, during the exchange, he pulled out a gun and fired it in the air multiple times.  Williams explained that this incident was prompted because he was upset with the men and felt like the men were "flirting with him" and "giving [him] the eye" and when he

fired the gun he was just trying to "scare them" and let them know that they should not "stare at [him] like that." Williams also stated that he had been drinking earlier that day.

The State initially offered Williams a plea deal of five years' imprisonment with a mandatory minimum of three years. He rejected this offer and responded affirmatively when asked by the trial court whether he understood that, if found guilty on all four counts, he would be sentenced to eighty years in prison because each count carried a mandatory minimum sentence of twenty years.

The case proceeded to trial, and the jury found Williams guilty on all counts. Id. at 881. The jury specifically found that he had possessed and discharged the firearm on each of the aggravated assault counts. Id. At sentencing, the trial court acknowledged that under the "10-20-Life" statute, section 775.087(2)(a)2., Florida Statutes (2008), each count carried a mandatory minimum sentence of twenty years. Id. at 881. The State argued that the mandatory minimums were required to be imposed consecutively pursuant to section 775.087(2)(d), Florida Statutes (2008). Id. However, Williams argued that the trial court had the discretion to impose consecutive or concurrent sentences based on this Court's decision in State v. Christian, 692 So. 2d 889 (Fla. 1997), in which this Court stated that "[a]s a general rule, for offenses arising from a single episode, stacking is permissible where the violations of the mandatory minimum statutes cause injury to multiple

- 3 -

victims, or multiple injuries to one victim." Id. at 890-91 (emphasis added) (footnotes omitted). In response, the State pointed out that section 775.087(2)(d) was enacted after this Court's decision in Christian and expressly requires consecutive sentences. Williams, 125 So. 3d at 881. The trial court agreed with the State, and Williams was sentenced to four consecutive mandatory minimum twenty-year sentences. Id. Judge Joseph Marx noted that he "thought it was required and it's mandatory to impose four consecutive twenty-year sentences pursuant to the statute" and if he "didn't feel compelled to do it, [he] wouldn't do it." Judge Marx also assured that he otherwise would not sentence Williams to eighty years on this case because the court has "first-degree murder cases that people get less than this."

On appeal, the Fourth District affirmed the trial court, concluding that "the trial court was required to impose consecutive sentences" under section 775.087(2)(d). Id. at 882. The Fourth District focused on the plain language of the statute and this Court's interpretation of that language in State v. Sousa (Sousa II), 903 So. 2d 923 (Fla. 2005). Id. at 882-84. Accordingly, the Fourth District affirmed Williams' sentences and certified the question of great public importance at issue here. Id. at 884.

## ANALYSIS

The present question for consideration is whether a trial court is required under section 775.087(2)(d) to impose consecutive minimum terms of imprisonment for multiple offenses when the offenses arise from a single criminal episode. "Judicial interpretations of statutes are pure questions of law subject to de novo review." Johnson v. State, 78 So. 3d 1305, 1310 (Fla. 2012). Statutory interpretation in any case "begin[s] with the actual language used in the statute because legislative intent is determined first and foremost from the statute's text." Raymond James Fin. Servs., Inc. v. Phillips, 126 So. 3d 186, 190 (Fla. 2013) (quoting Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198 (Fla. 2007)). "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Bennett v. St. Vincent's Med. Ctr., Inc., 71 So. 3d 828, 837-38 (Fla. 2011) (quoting Fla. Birth-Related Neuro. Injury Comp. Ass'n v. Dep't of Admin. Hearings, 29 So. 3d 992, 997 (Fla. 2010)).

The 10-20-Life statute or section 775.087, Florida Statutes, is implicated when a defendant is convicted of any of the qualifying felonies enumerated in subsection (2). § 775.087(2)(a), Fla. Stat. (2008). Paragraph (2)(a) sets forth the mandatory minimum terms of imprisonment a trial court must impose when a

defendant possesses or uses a firearm during the commission of a qualifying

felony. In 1999, the Legislature added the following paragraph:

> It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted. <u>The court shall impose any term of imprisonment provided for in this subsection consecutively to any other term of imprisonment imposed for any other felony offense</u>.

§ 775.087(2)(d), Fla. Stat. (1999) (emphasis added).

As we have previously determined, this language is clear and unambiguous.

See <u>Sousa II</u>, 903 So. 2d at 928 ("[N]or do we find the language of [section

775.087(2)(d)] to be ambiguous."). As written, paragraph (2)(d) contemplates two

distinct imprisonment terms: a term imposed for a qualifying felony pursuant to

subsection (2), and a term imposed for a non-qualifying felony. The last sentence

of paragraph (2)(d) further delineates the manner in which these distinct

imprisonment terms are to be served in relation to one another. Specifically, it

expressly mandates only that a qualifying felony sentence run "consecutively to"

any sentence imposed for a non-qualifying felony. Nothing within paragraph

(2)(d)'s plain language also requires, as the State posits, a qualifying felony

sentence to run consecutively to another qualifying felony sentence.

Furthermore, at no point since its inception in the past sixteen years have we

interpreted paragraph (2)(d) to mandate the imposition of consecutive sentences for

the qualifying felonies.  See Sousa II, 903 So. 2d at 927.  Rather, we have repeatedly deferred to the trial judge's discretion wherever the Legislature has not explicitly subjugated it.  See State v. Thomas, 487 So. 2d 1043, 1044 (Fla. 1986).  Before the statute was amended in 1999, this Court expressly addressed the issue of whether trial courts were legally permitted to impose consecutive mandatory minimum sentences for multiple firearm offenses that occurred during a single criminal episode.  Beginning with Palmer v. State, 438 So. 2d 1 (Fla. 1983), we opined that it was not the Legislature's intention for a defendant to serve consecutive three-year mandatory minimum sentences for possessing a firearm while robbing multiple victims at the same time.  Id. at 3.  It was noted, however, that "[b]y this holding, we do not prohibit the imposition of multiple concurrent three-year minimum mandatory sentences upon conviction of separate offenses included under subsection 775.087(2)."  Id. at 4 (emphasis omitted).

We later refused to extend Palmer's prohibition against consecutive sentencing to cases in which the defendant shoots at multiple victims, based upon our belief "that the legislature intended that the trial court have discretion to impose consecutively or concurrently the mandatory minimum time to be served."  Thomas, 487 So. 2d at 1044.  In Thomas, for example, Thomas shot a woman numerous times and also shot at the woman's son during the same encounter.  Because the record presented evidence of "two separate and distinct offenses

involving two separate and distinct victims," we upheld the three-year mandatory minimum sentences imposed consecutively against Thomas. Id. Similarly, Christian involved a defendant who shot two people in the midst of a bar brawl. We explained that "[t]he injuries bifurcate the crimes for stacking purposes. The stacking of firearm mandatory minimum terms thus is permissible where the defendant shoots at multiple victims, and impermissible where the defendant does not fire the weapon." Christian, 692 So. 2d at 890-91 (footnotes omitted). Accordingly, we upheld the concurrent sentences for Christian's convictions— including second-degree murder with a firearm, aggravated battery with a firearm, and discharging a firearm in an occupied building—as well as the three-year mandatory minimum sentences imposed consecutively for the first two offenses. Id. at 891.

After the 10-20-Life law's 1999 amendment, this Court assessed what impact the addition of paragraph (2)(d) had on trial judges' sentencing authority under the statute. In Sousa II,

> [t]he Second District Court of Appeal reversed the sentence, holding that section 775.087(2)(d) did not "provide the legislative authorization necessary to require consecutive sentencing" for the mandatory minimum terms of [Sousa's] sentences. Sousa[ v. State, 868 So. 2d 538, 540 (Fla. 2d DCA 2003)]. This Court accepted jurisdiction based upon express and direct conflict with State v. Christian, 692 So. 2d 889 (Fla. 1997), a decision holding that a trial court did have the authority to impose consecutive mandatory minimum sentences where a gun was fired at and injured multiple victims.

<u>Sousa II</u>, 903 So. 2d at 924. Thus, the only question before this Court was whether it was legally permissible for trial judges to impose consecutive sentences under the current 10-20-Life law. In unanimously reviving our previous interpretations of the statute, we stated:

> We disagree [with the Third District's holding in <u>Mondesir v. State</u>, 814 So. 2d 1172 (Fla. 3d DCA 2002),] that section 775.087 as amended still does not permit consecutive sentences. To draw that conclusion we would have to find that the 1999 amendment to section 775.087 overrules our decisions in <u>Christian</u> and <u>Thomas</u>. We do not agree. Rather we conclude that this amendment to the statute is consistent with the decisions in <u>Christian</u> and <u>Thomas</u>.

<u>Id.</u> at 927. Thus, we concluded that paragraph (2)(d) did not attenuate trial judges' authority to impose consecutive mandatory minimum sentences for firearm offenses.

This controlling precedent establishes the following points of law for purposes of sentencing under the current 10-20-Life statute. Generally, consecutive sentencing of mandatory minimum imprisonment terms for multiple firearm offenses is impermissible if the offenses arose from the same criminal episode and a firearm was merely possessed but not discharged. <u>See id.</u> at 925; <u>Palmer</u>, 438 So. 2d at 4; <u>see also</u> <u>Perreault v. State</u>, 853 So. 2d 604, 606 (Fla. 5th DCA 2003) ("It has long been held that the Legislature did not intend for minimum mandatory terms to run consecutive to each other when the firearm offenses all occurred during the same criminal episode. This precedent predates the '10-20-

Life Law' in section 775.087(2)(a), Florida Statutes (2002).") (citing Palmer, 438 So. 2d 1).  It follows, therefore, that a trial court must impose the mandatory minimum sentences concurrently under such circumstances.

If, however, multiple firearm offenses are committed contemporaneously, during which time multiple victims are shot at, then consecutive sentencing is permissible but not mandatory.  See Sousa II, 903 So. 2d at 925-26; Christian, 692 So. 2d at 890-91; Thomas, 487 So. 2d at 1044-45; see also Valentin v. State, 963 So. 2d 317, 319-20 (Fla. 5th DCA 2007) ("[T]he imposition of consecutive minimum mandatory sentences under section 775.087(2), Florida Statutes (1997), is improper where the offenses occurred during a single criminal episode unless the defendant discharges the firearm and injures multiple victims or causes multiple injuries to one victim.").  In other words, a trial judge has discretion to order the mandatory minimum sentences to run consecutively, but may impose the sentences concurrently.

These principles are consistent with our reading of paragraph (2)(d)'s plain language as discussed above.  They also dovetail with sentencing judges' traditional discretionary function of determining whether multiple sentences arising from the same criminal episode are to be served concurrently or consecutively.  See Brooke v. State, 128 So. 814, 816 (Fla. 1930) ("The court fixes the penalty and the law fixes the beginning and expiration, unless more than one

- 10 -

imprisonment sentence is passed upon the same defendant, in which case the trial court may provide that the period of imprisonment may run concurrently or consecutively.") (citing Wallace v. State, 26 So. 713, 725 (Fla. 1899) ("[U]nder the discretion vested in the judges in this state as to the duration of terms of imprisonment to be fixed by them upon convictions for felonies, and in accordance with common-law principles, and the manifest intention of our criminal laws to punish separately each offense committed against them, in all criminal convictions, where the sentence is to a term of imprisonment, the court can, in its discretion, fix the term so that it will begin at the expiration of a former sentence.")); McCarthur v. State, 766 So. 2d 292, 293 (Fla. 4th DCA 2000) ("[T]he trial court still has the discretion to run the sentence either concurrently or consecutively to any future punishment for the [control-release] violation.") (citing Scantling v. State, 711 So. 2d 524, 524 (Fla. 1998)); see also § 775.021(4)(a), Fla. Stat. (2008) ("Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively."); Borges v. State, 394 So. 2d 1046, 1050 (Fla. 4th DCA 1981) ("[I]t is clear that Section 775.021(4), Florida Statutes (1977), does not alter the traditional discretionary function of the trial court in deciding whether to

- 11 -

adjudicate a defendant or, once adjudicated, whether the sentences are to be served concurrently or consecutively.").  As such, we hold that, under the plain language of section 775.087(2)(d), consecutive mandatory minimum sentences are not required, but are permissible, if the sentences arise from a single criminal episode.

Both our dissenting colleague Justice Polston and the State maintain that the Legislature's use of the mandatory term "shall" is indicative of its intent to require consecutive sentencing.  Dissenting op. at __.  This limited reading of paragraph (2)(d)'s plain language improperly disregards other vital words within the provision.  Indeed, if this limited reading were correct, the Legislature would have omitted the restrictive clause applying to nonqualifying felony sentences.  In other words, the Legislature would have only stated, "The court shall impose any term of imprisonment provided for in this subsection consecutively" and would not have included the phrase, "to any other term of imprisonment imposed for any other felony offense."  The dissent and the State give no effect to this essential and unambiguous language.  Following their argument would not give all of the plain language full effect and would render part of the 10-20-Life statute meaningless.  This we cannot and will not do.  See Bennett, 71 So. 3d at 838 ("[W]hen a court interprets a statute, 'it must give full effect to all statutory provisions.  Courts should avoid readings that would render part of a statute meaningless.' " (quoting Gomez v. Vill. of Pinecrest, 41 So. 3d 180, 185 (Fla. 2010))).

The dissent and the State also justify a reading of paragraph (2)(d) that mandates consecutive sentencing of mandatory minimum imprisonment terms by highlighting the Legislature's expressed intent to punish offenders who possess or use firearms to the fullest extent of the law. Dissenting op. at __. However, such a blanket requirement would yield unconscionably excessive imprisonment terms in many cases. See Fla. Dep't of Highway Safety & Motor Vehicles v. Hernandez, 74 So. 3d 1070, 1079 (Fla. 2011) ("We have held that [s]tatutes, as a rule, will not be interpreted so as to yield an absurd result.") (citation omitted); V.K.E. v. State, 934 So. 2d 1276, 1289 (Fla. 2006) ("We will deviate from a statute's plain language when necessary to avoid an absurd result. '[N]o literal interpretation should be given that lends to an unreasonable or ridiculous conclusion.' " (quoting State v. Sullivan, 116 So. 255, 261 (Fla. 1928))).

Assume, for example, a first-time offender enters a sold-out movie showing at a local theater, fires his pistol towards the ceiling, and exclaims to the audience, "Nobody move; this is a stick up!" Also assume that a gang member with an extensive rap sheet engages in a shoving altercation with a gang rival in the theater parking lot before firing his pistol at and seriously injuring the rival. The gang member then flees from responding law enforcement officers but is apprehended several miles down the road. If 200 observers were present during the theater robbery, then, under the 10-20-Life statute, the trial judge would be required to

sentence the theater shooter to a minimum imprisonment term of twenty years for each robbery count. See §§ 775.087(2)(a), (d), Fla. Stat. But, the interpretation the State asks this Court to adopt in this case would further require the trial judge to order those sentences to run consecutively. As such, the theater shooter would be required to serve a minimum of 4,000 years in prison before becoming eligible for early release. However, the shooter who injures the gang rival may serve a minimum of only thirty-five years' imprisonment—twenty-five years for the aggravated battery followed by ten years for the escape, or vice versa. See § 775.087(2)(a), Fla. Stat.

Such a result defies the plain and obvious meaning of the language of the statute. Nowhere in the statute does the Legislature require such grossly disproportionate sentences. Undeniably, the dissent's and State's positions would lead to a result that is arbitrary and capricious due to the application of a rule that essentially would prohibit a trial court from considering the circumstances unique to each defendant's case. This is particularly true in situations reminiscent of the above hypothetical. It belies common sense that, applying the statute as the dissent and the State request, defendants who commit relatively harmless offenses must serve hundreds of years in prison while some of the worst offenders receive comparatively de minimus imprisonment terms for crimes that are far more heinous in nature—and especially for nearly killing another person.

# CONCLUSION

For the foregoing reasons, we answer the certified question in the negative and quash the Fourth District's decision in <u>Williams</u>. We remand this case for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY, J., concurs in result with an opinion.
POLSTON, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., concurring in result.

I agree with the majority that the decision on review should be quashed and the certified question answered in the negative.

I would conclude that the reference to "any other felony offense" at the end of the final sentence of section 775.087(2)(d) is ambiguous. The reading adopted by the dissent is one reasonable understanding of the statute. Dissenting op. of Polston, J., at 16-18. But it is also reasonable to understand that "any other felony offense" refers to a felony offense other than one subject to punishment under section 775.087(2). This reading is reasonable because the final sentence of section 775.087(2)(d) suggests a dichotomy between "any term of imprisonment provided for in [section 775.087(2)]" and "other term[s] of imprisonment"—that is, terms of imprisonment <u>not</u> provided for in section 775.087(2).

- 15 -

The rule of lenity requires that when a statute is reasonably "susceptible of different constructions" the statute must "be construed most favorably to the accused." § 775.021(1), Fla. Stat. Accordingly, the trial court erred in concluding that the statute required the imposition of consecutive sentences for each offense subject to sentencing under section 775.087(2).

POLSTON, J., dissenting.

I agree with the Fourth District Court of Appeal that consecutive sentences are mandatory under the plain meaning of the statute and would answer the certified question in the affirmative. Therefore, I respectfully dissent.

Section 775.087(2)(a)2., Florida Statutes, provides that a person who is convicted of committing, or attempting to commit, any of several enumerated felonies, including aggravated assault, and who, while committing the offense, discharged a firearm, "shall be sentenced to a minimum term of imprisonment of 20 years." Additionally, section 775.087(2)(d) (emphasis added) provides that:

> It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted. The court shall impose any term of imprisonment provided for in this subsection consecutively to any other term of imprisonment imposed for any other felony offense.

The plain language of section 775.087(2)(d) mandates consecutive sentencing. The Legislature's use of the mandatory term "shall," coupled with the

fact that the provision contains no exceptions, is a clear indication that the Legislature intended to require consecutive mandatory minimum sentences even if the offenses arise from a single criminal episode. See Allied Fidelity Ins. Co. v. State, 415 So. 2d 109, 111 (Fla. 3d DCA 1982) ("[W]here 'shall' refers to some required action preceding a possible deprivation of a substantive right, or the imposition of a legislatively-intended penalty, or action to be taken for the public benefit, it is held to be mandatory." (internal citations omitted)); see also Dunbar v. State, 89 So. 3d 901, 906 n.5 (Fla. 2012) (explaining that, because of the use of the word "shall" in section 775.087(2), a trial court has "no discretion . . . in deciding whether to impose mandatory minimum terms").

Furthermore, when the mandatory language of "shall" is considered along with section 775.087(2)(d)'s express statement of legislative intent—"that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law"—it clearly demonstrates that the Legislature intended for the mandatory minimums provided for in the 10-20-Life statute to be imposed consecutively so that the harshest penalty could be imposed on individuals who use firearms during the commission of certain crimes.

Accordingly, I would hold that, under the plain language of section 775.087(2)(d), consecutive mandatory minimum sentences are required even if the

sentences arise from a single criminal episode. I would answer the certified question in the affirmative and approve the Fourth District's decision. Therefore, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

     Fourth District - Case No. 4D10-4237

     (Palm Beach County)

Jonathan Russell Kaplan of Richard G. Lubin, P.A., West Palm Beach, Florida,

     for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Consiglia Terenzio, Bureau Chief, and Mitchell Alan Egber, Assistant Attorney General, West Palm Beach, Florida,

     for Respondent