FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D17-448
_____

AARON BEAL WANLESS,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
William F. Stone, Judge.

May 6, 2019

WINSOR, J.

Aaron Wanless appeals his convictions and sentences for five counts of aggravated assault. The convictions followed a disturbing episode during which Wanless threatened his father and law enforcement officers. On appeal, Wanless argues the trial court erred in allowing certain testimony about his sanity and, separately, in imposing consecutive 10-20-Life mandatory-minimum sentences. We affirm the convictions but reverse the consecutive 10-20-Life mandatory-minimum sentences.

I.

After fighting with his wife, Wanless got drunk and went to his father's house. Once there, Wanless accused his father of stealing a gun and demanded to know where it was. Wanless then

grabbed a knife from the kitchen and threatened to slit his father's throat unless the father produced the gun.

Fearing for his life, Wanless's father left the house and called 911. After three sheriff's deputies responded, Wanless walked outside with a gun and fired a single shot into the air. The sheriff's deputies ordered Wanless to drop the gun, but Wanless refused, yelling that they would have to shoot him. After a tense standoff, Wanless retreated into the house and fled out a back door. He was arrested the next day.

Wanless asserted an insanity defense. A licensed psychologist testified that Wanless's medication was not working and that a manic episode was to blame for his conduct. The State called its own expert, who testified that Wanless was not insane. Wanless objected to the State's expert testimony, arguing the expert was not qualified to opine about sanity because he was not a "psychiatrist, licensed psychologist, or physician," but was instead a mental health counselor with a Ph.D. in Education. The court overruled Wanless's objection, finding the State's expert qualified based on his "education, training, and experience."

The jury convicted Wanless on all five counts of aggravated assault. The first count was for Wanless's assaulting his father with the knife. The next four were for Wanless's assaulting the three deputies and his father with the gun. (The jury found that Wanless discharged a firearm as to the latter four counts.) The court sentenced Wanless to just over eight years for the knife assault; three concurrent twenty-year terms (pursuant to 10-20-Life)[1] for the assaults against the deputies; and a consecutive twenty-year term (also pursuant to 10-20-Life) for the remaining count.

## II.

Wanless's first argument is that the trial court should have excluded the State's expert testimony about his sanity. Wanless argues that section 916.115(1)(a), Florida Statutes—which provides that court-appointed experts who evaluate defendants for

---

[1] § 775.087, Fla. Stat. (2015).

sanity "each shall be a psychiatrist, licensed psychologist, or physician"—precludes expert testimony from anyone who is not a psychiatrist, licensed psychologist, or physician. But this argument confuses the qualifications of experts the court appoints to evaluate sanity with the qualifications of experts parties present at trial. Although experts appointed pursuant to section 916.115 sometimes testify at trial, s*ee* Fla. R. Crim. P. 3.216(i) ("Any experts appointed by the court *may* be summoned to testify at the trial . . . ." (emphasis added)), the parties may also introduce "[o]ther evidence regarding the defendant's insanity or mental condition," so long as it is otherwise admissible, *see id.*

Accordingly, the fact that the State's expert was not a "licensed psychologist, psychiatrist, or physician" did not preclude his testimony at trial. Whether the witness was qualified to testify as an expert was therefore left to the trial court's discretion, *see, e.g.*, *Penalver v. State*, 926 So. 2d 1118, 1134 (Fla. 2006) ("The qualification of a person as an expert is within the sound discretion of the trial judge."), and we find no abuse of that discretion.

III.

Wanless's second argument is that his consecutive sentences under 10-20-Life were illegal because his convictions stemmed from a single criminal act. He argues that under the facts of his case—one gunshot, multiple assault victims, no physical injuries— the court lacked authority to impose consecutive sentences.

The issue of whether and when consecutive sentences are permissible under 10-20-Life has long been a subject of confusion. Although the Florida Supreme Court has continued to establish new rules in this area, the facts of this case do not fit neatly into any of them. Nonetheless, we conclude that Florida Supreme Court precedent precluded Wanless's consecutive sentences.

In *Williams v. State*, the supreme court walked through some of its earlier cases and concluded that the "controlling precedent establishes [these] points of law for purposes of sentencing under the current 10–20–Life statute." 186 So. 3d 989, 993 (Fla. 2016). First, as a general matter, "consecutive sentencing of mandatory minimum imprisonment terms for multiple firearm offenses is impermissible if the offenses arose from the same criminal episode

3

and a firearm was merely possessed but not discharged." *Id.* Second, if "multiple firearm offenses are committed contemporaneously, during which time multiple victims are shot at, then consecutive sentencing is permissible but not mandatory." *Id.* But these points do not help here: Wanless *did* discharge his firearm (he did not "merely possess[]" it), but he did *not* shoot "at" multiple people; he shot once—and in the air.

*Williams* therefore does not explicitly answer the question presented here: whether consecutive mandatory-minimum sentences can stand when there are multiple victims but only a single gunshot. Nor is the answer in the 10-20-Life statute's text. As Justice Canady explained, "[t]he distinction . . . made based on whether a firearm was fired is totally untethered from anything in the text of the relevant statutes." *Walton v. State*, 208 So. 3d 60, 69 (Fla. 2016) (Canady, J., dissenting). Indeed, "[u]nder the statutory provisions, the firing of a firearm is relevant only to the length of the mandatory minimum sentence." *Id.* (Canady, J., dissenting); *accord Lifred v. State*, 643 So. 2d 94, 96 (Fla. 4th DCA 1994) (Pariente, J.) (noting that "[a]lthough section 775.087(2) does not contain any explicit language restricting trial courts from imposing consecutive mandatory minimums for separate criminal offenses involving the use of a firearm," the Florida Supreme Court has limited authority of trial courts to impose consecutive sentences (citing *Palmer v. State*, 438 So. 2d 1 (Fla. 1983))).

With no help from the statutory text and no explicit answer from the Florida Supreme Court, this court has done its best to discern the answer from *Williams* (and the cases that preceded it). And our cases, interpreting *Williams*, have held that one gunshot *is* enough. In *Thornes v. State*, for example, we noted that "*Williams* did not directly address whether or not consecutive mandatory minimum sentences were permissible [when] the defendant only shot at one victim but was convicted of multiple firearm offenses arising out of the same criminal episode." 223 So. 3d 411, 411-12 (Fla. 1st DCA 2017). This court went on to hold that—"based on *Williams*,"—consecutive sentences are permissible in that circumstance. *Id.* at 412. Similarly, in *Burns v. State*, this court applied *Williams* and held that consecutive mandatory-minimum sentences were allowed after attempted second-degree murder and felon-in-possession convictions when

4

the defendant "discharged a firearm striking a single victim" in a single episode. 212 So. 3d 546, 546 (Fla. 1st DCA 2017); *see also Plummer v. State*, 246 So. 3d 506, 509 (Fla. 1st DCA 2018) ("Under *Williams*, consecutive mandatory minimum sentences are permissible, but not required if there is a discharge of a firearm."); *Bradley v. State*, 223 So. 3d 421, 422 (Fla. 1st DCA 2017) (quoting *Thornes* without attribution and finding consecutive sentences permissible when defendant shot at single victim); *Fleming v. State*, 219 So. 3d 1038, 1038 (Fla. 2017) (consecutive mandatory-minimum sentences permissible for attempted-murder and felon-in-possession convictions in one criminal episode with single victim; no mention of multiple gunshots); *Tate v. State*, 194 So. 3d 564, 565 (Fla. 1st DCA 2016) (consecutive mandatory-minimum sentences permissible for second-degree murder and felon-in-possession convictions in one criminal episode; no mention of multiple gunshots); *Howard v. State*, 100 So. 3d 136 (Fla. 1st DCA 2012) (explaining, pre-*Williams*, that "[t]he imposition of consecutive minimum mandatory sentences under section 775.087(2) is improper where the offenses occurred during a single criminal episode, unless the defendant discharged the firearm and injured multiple victims or caused multiple injuries to one victim.").

We are of course bound to follow our own decisions unless and until an intervening decision from the Florida Supreme Court, the United States Supreme Court, or this court sitting en banc compels otherwise. *See Schlesinger v. Jacob*, 240 So. 3d 75, 78 (Fla. 3d DCA 2018) (Luck, J., concurring). We therefore must consider whether the Florida Supreme Court's newest decision in this area—*Miller v. State,* 265 So. 3d 457 (Fla. 2018)—conflicts with our post-*Williams* decisions.

The defendant in *Miller* was convicted of kidnapping with a firearm, aggravated battery, and possession of a firearm by a convicted felon. *Id.* at 458. His offenses were part of one criminal episode that involved one victim and no gunshot. *Id.* at 459. Applying *Williams*, the court concluded that under those facts, "consecutive sentences are impermissible." *Id.* This outcome is consistent with the pronouncement in *Williams* (and earlier cases) that multiple offenses in a single criminal episode generally cannot support consecutive mandatory-minimum sentences absent a gun

5

discharge. *Williams*, 186 So. 3d at 933. And if *Miller* did nothing but reiterate that rule, it would not conflict with our decisions in *Bradley*, *Burns*, *Thornes*, *Flemming*, or *Tate*—each of which featured a firearm discharge.

But *Miller* also expressly approved *Torres-Rios v. State*, 205 So. 3d 883 (Fla. 5th DCA 2016), in which there was a discharge but in which the court nonetheless found consecutive mandatory-minimum sentences impermissible. *Id.* at 883. Citing *Williams*, the court in *Torres-Rios* concluded consecutive sentences were illegal "where there was only a single discharge of the firearm and only one person was shot during a single criminal episode." *Id.* Several of our own decisions had cited conflict with *Torres-Rios*, *see Bradley*, 223 So. 3d at 422; *Thornes*, 223 So. 3d at 412; *Tate*, 219 So. 3d at 1038; *Burns*, 212 So. 3d at 546, and to the extent there was a conflict, the Florida Supreme Court has now sided with *Torres-Rios*.

Wanless shot only once, so had there been just one victim, this would be like *Torres-Rios*. And because it approved *Torres-Rios*, the supreme court's decision in *Miller* would therefore compel us to reverse, notwithstanding our earlier precedent. But unlike the defendant in *Torres-Rios*, Wanless had multiple victims. There is some language in *Miller* suggesting that this fact changes the result. In fact, *Miller* explained that in *Williams*, "consecutive sentences were permissible because there were multiple victims and the gun was fired." 265 So. 3d at 459. If the rule is that simple, we must affirm because here, too, there were multiple victims and the gun was fired.

Other language in *Miller* also supports Wanless's consecutive sentences. The court said, for example, that "[w]here, during a single criminal episode, there are multiple victims or multiple injuries to a single victim, consecutive sentences are permitted at the discretion of the trial judge." *Id.* at 458. And it said that the 10-20-Life statute "permits consecutive sentences at judicial discretion for specified crimes committed in a single criminal episode with *either* multiple victims or injuries." *Id.* at 459 (emphasis added). But the court also reminded us that it "does not reverse itself sub silentio and the cases upon which *Williams* relied are still good law." *Id.* at 459 n.1. And those cases, unlike *Miller*

6

itself, suggest that Wanless's consecutive sentences were unlawful.

Among the cases *Williams* relied on are *Palmer v. State*, 438 So. 2d 1 (Fla. 1983); *State v. Thomas*, 487 So. 2d 1043 (Fla. 1986); and *State v. Christian*, 692 So. 2d 889, 891 (Fla. 1997). The defendant in *Palmer* interrupted a funeral service, brandished a gun, and demanded money from the mourners. 438 So. 2d at 2. He took money and wallets and left without firing a shot. *Id.* His sentence included thirteen consecutive three-year mandatory minimums based on thirteen robbery convictions. *Id.* The Florida Supreme Court found that unlawful, noting that it did "not believe the legislature intended such a result." *Id.* at 3. The court did not explicitly hinge its decision on the fact that no shot was fired, but it did say that it would not prohibit consecutive mandatory-minimum sentences if multiple offenses arose "from separate incidents occurring at separate times and places." *Id.* at 4.

Then, in *State v. Thomas*, the court concluded a defendant who shot multiple times was eligible for mandatory minimums. 487 So. 2d at 1045. The multiple shots constituted the "separate and distinct offenses" missing from *Palmer. Id.*; *cf. also State v. Enmund*, 476 So. 2d 165, 168 (Fla. 1985) (finding *Palmer* distinguishable where there were "two separate and distinct homicides"). Finally, in *Christian*, which also involved a defendant who shot multiple people, the court explained that the separate acts "bifurcate[d] the crimes for stacking purposes." 692 So. 2d at 890-91.[2] In simpler terms, the court explained that "Christian shot two people. Stacking is permissible." *Id.* at 891.

---

[2] The separate acts in *Christian* were separate shots, and although the court found multiple injuries—and that the multiple injuries bifurcated the crimes—it clarified that there need not be "injuries" in the traditional sense. 692 So. 2d at 891 n.1. Instead, "[t]he injury may consist of the heightened danger caused by a fired weapon." *Id.* So multiple shots count as multiple injuries when deciding whether there were "bifurcate[d] crimes for stacking purposes"—regardless of whether there were injuries. *Id.*; *see also Williams*, 186 So. 3d at 993 (noting consecutive sentences permissible when multiple people "are shot at"); *Thomas*, 487 So.

7

In several cases, including *Williams* and *Miller*, the Florida Supreme Court has returned to the concept that separate acts "bifurcate the crimes for stacking purposes." *Miller,* 265 So. 3d at 459 (quoting *Christian*); *accord Williams*, 186 So. 3d at 993 (quoting *Christian*); *State v. Sousa*, 903 So. 2d 923, 926 (Fla. 2005). Multiple gunshots could constitute the separate acts necessary for this bifurcation, which is why the court consistently explains that "shooting at" multiple people is enough. But in Wanless's case, with just one shot, there are no distinct acts to effect the bifurcation. There were multiple victims, but each was victimized by the same act, the same assault, the same single gunshot. *See State v. Sousa*, 903 So. 2d 923, 926 (Fla. 2005) (explaining that "[t]he holding of *Christian* [turned on] the fact that the defendant fired his gun multiple times, injuring multiple victims"); *see also Cooper v. State*, 739 So. 2d 82, 86 (Fla. 1999) (holding that "each violation of the mandatory minimum statute must cause a separate injury" to allow stacking based on multiple injuries or multiple victims (quoting *Christian*; marks omitted)); *Lifred v. State*, 643 So. 2d 94, 98 (Fla. 4th DCA 1994) (Pariente, J.) ("In the case of armed robberies of multiple victims, as in *Palmer*, the firearm is used simultaneously and in the same manner to rob more than one person. However, discharge of a firearm in the course of an armed robbery changes the nature of the crime and manner of commission. With each successive discharge of the firearm at each additional victim, the firearm is being used separately and distinctly, and in a different manner.").

Without distinct acts, our case is more like *Palmer*, in which multiple mourners became multiple robbery victims leading to multiple convictions, but in which the court found no distinct acts to support consecutive mandatory-minimum sentences. *Palmer*, 438 So. 2d at 3; *see also State v. Parker,* 812 So. 2d 495, 498 (Fla. 4th DCA 2002) (concluding consecutive mandatory-minimum

---

2d at 1044 (approving consecutive mandatory-minimum sentences when the defendant shot twice but missed once); *Valentin v. State*, 963 So. 2d 317, 320 (Fla. 5th DCA 2007) ("Firing the weapon at an individual without striking him or her may be enough to cause the type of injury that will allow imposition of consecutive minimum mandatory sentences under the statute." (citing *Christian*)).

sentences impermissible because "[a]lthough [defendant] pointed the guns at four victims, Parker fired the gun only once"). We therefore conclude that, based on Florida Supreme Court precedent, Wanless was entitled to concurrent sentences.

As the Florida Supreme Court continues to develop rules in this area, it may well conclude that any gunshot is enough. Or it may decide that a single act can be "bifurcated" if it simultaneously harms multiple people. Or it may abandon its current rules altogether and decide to untether the legality of consecutive mandatory-minimum sentences from the number of victims or gunshots. But based on the Florida Supreme Court precedent as we now understand it, Wanless's consecutive mandatory-minimum sentences cannot stand.

AFFIRMED in part; REVERSED in part.

WINOKUR, J., concurs; MAKAR, J., concurs in part and dissents in part with opinion.

––––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––––

MAKAR, J., concurring in part, dissenting in part.

When confronted by three sheriff's deputies, Aaron Beal Wanless fired a single shot skyward, had a tense standoff with the officers while wielding his gun, and fled. Because his father was present during the entire confrontation, Wanless was charged with four separate counts of aggravated assault with a deadly weapon, three on the officers and one on his father. If only one deputy (or just the father) were present, the single gunshot and standoff would likely be insufficient to impose consecutive sentences under Florida's 10-20-Life statute, § 775.087(2)(d), Fla. Stat. (2018), because the incident involved a single criminal episode with a single shot and only one victim. *Torres-Rios v. State*, 205 So. 3d

9

883 (Fla. 5th DCA 2016), *approved, Miller v. State,* 43 Fla. L. Weekly S426 (Fla. Oct. 4, 2018).

But what happens when more than one person was victimized by Wanless's conduct? Did the presence of three officers and the father when Wanless fired his weapon and brandished it thereafter give the trial court discretion to impose consecutive mandatory-minimum sentences? Here, the trial court did not impose four consecutive mandatory-minimum sentences; instead, it imposed three *concurrent* mandatory-minimum sentences of twenty years for the aggravated assault on the three officers but imposed a *consecutive* mandatory-minimum sentence of twenty years for the aggravated assault on the father. In other words, Wanless must serve twenty years for the aggravated assault with a gun on the officers followed by twenty years for the aggravated assault with a gun on his father, a total of forty years.

On this point, our supreme court in *Williams v. State*, 186 So. 3d 989, 993 (Fla. 2016), addressed whether the imposition of consecutive mandatory-minimum sentences was permissible, but not required, where a defendant fired multiple shots in the air during a squabble with four men during a single criminal episode. It concluded that if "multiple firearm offenses are committed contemporaneously, during which time multiple victims are shot at, then consecutive sentencing is permissible but not mandatory." *Id.*

Here, the father and each of the officers were victimized by the gun's discharge and brandishment, i.e., an aggravated assault with the gun. The deputies at the scene said they were scared and fearful throughout the encounter due to the gunshot and Wanless's brandishing his weapon openly during the tense standoff that followed. One deputy testified that he was "extremely close" to shooting Wanless; the other said he was "as close as any human has ever come" to doing so. The father, who had been threatened by Wanless just before the officers arrived, was scared and became distraught after the gunshot, pleading with the officers not to shoot his only son. Under these circumstances, where there are multiple victims arising from a single gunshot and an ongoing encounter with an armed and unstable suspect, consecutive sentencing is permissible. Wanless's actions amounted to an aggravated assault

10

upon each of the three officers and his father, thereby giving the trial judge the authority to impose consecutive sentences as to one or all of the charges. The trial judge was not required to do so, but had the discretion to do so, *see Williams*, choosing to make consecutive only the sentence for the aggravated assault against the father (oddly, the trial judge initially imposed only *concurrent* probation, but changed that to a *consecutive* sentence of mandatory twenty years when the prosecutor pointed out that probation was impermissible).

*Palmer v. State*, 438 So. 2d 1, 2 (Fla. 1983), has similarities to this case but is distinguishable because it did not involve the actual discharge of a firearm, it pre-dates the 1999 revisions to the 10-20-Life statute, and its holding was premised on the then-existing parole system (that statutorily required parole considerations that consecutive sentencing would thwart). In *Palmer*, an intruder, Ronald Gene Palmer, walked into a funeral parlor during a wake with a pistol and ordered mourners to give up their money and valuables. Palmer brandished the pistol in front of the group, resulting in aggravated assault charges; no shot was fired, however. Palmer was found guilty and sentenced to "seventy-five years' imprisonment on each of thirteen robbery counts, the sentences to run *consecutively* for a total of 975 years." *Id.* As to the "counts of aggravated assault and carrying a concealed firearm Palmer received sentences of five years for each, *consecutive* to each other and to the robbery counts." *Id.* The trial court in *Palmer* "also imposed the mandatory minimum of three years on each robbery count for a total of thirty-nine years." *Id.*

On appeal, the Florida Supreme Court was "primarily concerned with the issue of whether the trial court erred in imposing three-year mandatory minimums on each of thirteen consecutive sentences, for a total of thirty-nine years *without eligibility for parole*." *Id.* at 3 (emphasis added). As to that issue alone, the Court reversed, holding that consecutive sentencing of the thirteen mandatory-minimums was impermissible due to the then-existing statutory necessity that Palmer be eligible for parole in three years. Conflicting statutory provisions and the absence of clear authority for stacking required that thirteen mandatory-minimum sentences on the robbery counts could not be imposed consecutively. *Id.* at 3-4. The Court, however, left in place the

11

consecutive sentences for the robbery and aggravated assault/carrying firearm counts against Palmer totaling almost a millennium. *See State v. Boatwright*, 559 So. 2d 210, 213 (Fla. 1990) (noting that the Court in *Palmer* "found no reversible error in the trial court's imposition of sentences of seventy-five years' imprisonment on each of the thirteen robbery counts . . . with the sentences to run consecutively for a total of 975 years. Nor did the trial court err in imposing five-year sentences on the counts of aggravated assault and carrying a concealed weapon, such sentences to run consecutively to each other and to the robbery counts.").

Unlike *Palmer*, where no clear statutory directive existed to overcome the statutory requirement of parole consideration, the legislature in 1999 enacted section 775.087(2) as a part of the 10-20-Life revisions, which marked a major shift in sentencing laws, moving away from a parole-oriented system toward a more certain and punitive sentencing regime. From that point forward, no statutory conundrum with the parole system stood in the way of longer sentences that might be imposed consecutively; indeed, the legislature made its intent clear:

> (d) It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices *be punished to the fullest extent of the law*, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted. The court shall impose any term of imprisonment provided for in this subsection *consecutively* to any other term of imprisonment imposed for any other felony offense.

§ 775.087(2)(d), Fla. Stat. (1999) (emphasis added) (subsection (d) remains unaltered today); *see also* § 775.021(4)(a) & (b), Fla. Stat. (2019) (both subsections remain the same since their enactment in 1988) (subsection (b) states that the "intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity . . . to determine legislative intent" with

exceptions); *cf. State v. Suarez*, 485 So. 2d 1283, 1283 (Fla. 1986) (noting that "*Palmer* is still operative under the guidelines").

Our supreme court doesn't overrule itself sub silentio, but it seems that *Palmer*—a 4-3 precedent with a limited holding—has been elbowed aside, though not put on a shelf to die, in light of both *Williams* and the court's most recent pronouncement, *Miller v. State*, No. SC17-1598, 2018 WL 4784069, (Fla. Oct. 4, 2018), whose language supports affirming the consecutive mandatory-minimum sentence imposed against Wanless. Unlike this case, *Miller* was a single shot, single victim, single criminal episode case, i.e., the prototype for a prohibition on consecutive minimum-mandatory sentences. In the course of overturning the consecutive sentences in *Miller*, the court said two things. First, it said that "[w]here, during a single criminal episode, there are *multiple victims* or multiple injuries to a single victim, *consecutive sentences are permitted* at the discretion of the trial judge." *Id.* at *1 (emphasis added). Second, it said—in describing the holding in *Williams*— that "consecutive sentences were permissible because there were *multiple victims and the gun was fired.*" *Id.* at *2 (emphasis added).

The takeaway from the highlighted language, albeit persuasive dicta, is that the existence of multiple victims matters greatly in deciding whether consecutive sentences are permissible, a factor present in this case. In addition, the firing of a gun matters—multiple shots into the air in *Williams*, for example. Though our supreme court has not had an aggravated-assault-single-shot-in-the-air-with-multiple-victims case (yet), it is more consistent with its existing jurisprudence to apply *Williams* and affirm the trial court's discretionary imposition of a consecutive sentence in this case. Though no officer or the father was physically injured by the skyward gunshot, each was a "victim" of Wanless's aggravated assault with the gun; each felt fear from the assault, which included not just the gunshot but the ongoing standoff with Wanless brandishing the weapon. Because "multiple victims" were assaulted in this manner, the imposition of a consecutive sentence as to the aggravated assault of the father was permissible, even if Wanless's conduct is considered a single criminal episode.

13

For twenty years, the complexity and conundrums of Florida's sentencing law have created a degree of confusion as to when consecutive or concurrent sentences are permissible. *See* William A. Haddad, *"Appellate Sentencing" in Florida: A Plea for Less Complexity at the Trial Level*, 70 FLA. BAR. J. 28 (1996) (discussing the need for the reform of sentencing laws, including concurrent and consecutive sentencing, prior to the added complexities of the 10-20-Life law, which passed in 1999). This case showcases the muddle, as Judge Winsor's opinion cogently explains. Though I disagree with the result in this case as to the consecutive mandatory-minimum sentencing issue, I agree that our supreme court ought to bring greater clarity to this area of the law and, if possible, return to a textually-based jurisprudence; likewise, the legislature ought to consider clarifying the statutory framework to bring it into alignment with current criminal justice priorities. I concur as to the expert testimony issue.

_____

Andy Thomas, Public Defender, and Terry P. Roberts, Special Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Amanda D. Stokes, Assistant Attorney General, Tallahassee, for Appellee.